**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority          _____
Send              _____
Enter             _____
Closed            _____
JS-5/JS-6         _____
Scan Only         _____

| | |
|---|---|
| **CASE NO.:** **ED CV15-00087 SJO** | **DATE:** **November 24, 2015** |
| **6:13-bk-27611-MH** | |
| **TITLE:** **In re Douglas Jay Roger** | |

=====================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                          Not Present
Courtroom Clerk                           Court Reporter

**COUNSEL PRESENT FOR APPELLANT:**        **COUNSEL PRESENT FOR APPELLEES:**

Not Present                               Not Present

=====================================================================
**PROCEEDINGS (in chambers): ORDER REVERSING BANKRUPTCY COURT'S ORDER DENYING APPELLANT'S MOTION TO ABSTAIN; DENYING MOTION TO DISMISS APPEAL** [Docket No. 19]; **GRANTING MOTION TO AUGMENT THE RECORD, OR IN THE ALTERNATIVE, REQUEST FOR JUDICIAL NOTICE** [Docket No. 31]

This matter comes before the Court on the appeal by Appellant Revere Financial Corporation ("Revere" or "Appellant") of the United States Bankruptcy Court for the Central District of California's (the "Bankruptcy Court") order denying Revere's Motion for Order Abstaining From Hearing Any State Law Issues and Order Staying Claim Objection Proceedings (the "Order") in case number 6:13-BK-27611-MH. Appellant filed its opening brief ("Appellant Opening Brief") on February 25, 2015. Appellees Debtor Douglas J. Roger ("Roger") and Chapter 7 Trustee for Roger, Helen R. Frazer ("Frazer" or "Trustee"), filed their responsive briefs on March 11, 2015 ("Roger Brief" and "Trustee Brief," respectively). Appellant filed its reply brief ("Reply Brief") on March 25, 2015.

Also before the Court are Roger's Motion to Dismiss Appeal ("Motion to Dismiss"), filed on February 18, 2015, and Roger's Motion to Augment the Record to Include, or in the Alternative, Request for Judicial Notice, of Certain Documents ("Motion to Augment"), filed on March 11, 2015. Revere opposed the Motion to Dismiss ("Opposition to Motion to Dismiss") on March 9, 2015 and opposed the Motion to Augment ("Opposition to Motion to Augment") on March 23, 2015. Roger filed a reply in support of the Motion to Dismiss ("Reply in Support of Motion to Dismiss") on March 16, 2015. The Court found the matters suitable for disposition without oral argument and vacated the hearings on the Motion to Dismiss and Motion to Augment set for March 30, 2015 and April 13, 2015, respectively. *See* Fed. R. Civ. P. 78(b).

For the following reasons, the Court **GRANTS** Roger's Motion to Augment, **REVERSES** the Bankruptcy Court's Order denying Revere's Motion to Abstain, and **DENIES** Roger's Motion to Dismiss.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** **ED CV15-00087 SJO**          **DATE:** **November 24, 2015**
**6:13-bk-27611-MH**

I.      FACTUAL AND PROCEDURAL BACKGROUND

This appeal is related to three appeals of bankruptcy court orders before this Court[1] and involves an intricate set of facts surrounding Revere's attempt to collect the balance due on two loans, the "Roger Loan" and the "BLP Loan."  On December 29, 2009, Revere filed a Complaint in California state court (the "State Court") against Roger, Douglas J. Roger, M.D., Inc., APC ("DJRI"), Baleine LP ("Baleine"), Nicole Ebarb ("Ebarb") (collectively, the "Roger Defendants"), and numerous other individuals, trustees, and partnerships (the "State Court Action").  (*See* App. (Excerpts of R.) by Revere for Opening Br. ("Appellant R.") at Tab 6, 173.[2])  On November 15, 2012, Revere filed a First Amended Complaint asserting 18 causes of action. (Appellant R. at Tab 11, 470-534 ("FAC").)

A.      Revere's Allegations in the State Court Action

The FAC alleges the following with respect to the Roger Loan:  On August 21, 2007, non-party 1st Centennial Bank (the "Bank") and Roger entered into a promissory note ("Roger Note").  (FAC ¶ 61.)  DJRI, a California professional corporation, along with Roger, entered into a security agreement ("Roger Note Security Agreement") with the Bank on August 21, 2007 securing the Roger Note with "Collateral," as the term is defined in the Roger Note Security Agreement.  (FAC ¶¶ 63-64.)  Revere and DJRI also entered into a commercial guaranty ("Roger Note Guaranty") on August 21, 2007 in which DJRI guaranteed repayment of the Roger Note in full as and when due, and agreed to repay all expenses the Bank might incur to enforce the Roger Note Guaranty (collectively, the "Roger Loan").  (FAC ¶ 66.)  The FAC alleges similar facts with respect to the BLP Loan, which was allegedly entered into between Revere and Baleine and which is guaranteed by Roger and DJRI.[3]  (FAC ¶¶ 69-74.)  At the time the BLP Loan was made, Ebarb was a general partner at Baleine.  (FAC ¶ 13.)

---

[1]  See *In re Baleine, LP*, 5:14-CV-02513-SJO; *In re Douglas J. Roger*, 5:14-CV-02515 SJO; *In re Douglas J. Roger, M.D., Inc., APC*, 5:15-CV-00127-SJO.  (*See* Notice of Related Appeals, ECF No. 5.)

[2]  Unless otherwise indicated, citations to Appellant's four-volume Appendix (Excerpt of Record) for Opening Brief are designated as "Appellant R. at Tab [X], [Y]"  where "[X]" is the tab number and "[Y]" is the page number.  (*See* ECF Nos. 22-25.)

[3]     Although the FAC alleges that non-party 1st Centennial Bank entered into the loan, guaranty, and security agreements with Roger, DJRI, and Baleine, the FAC also alleges that, in June 2009, non-party Federal Deposit Insurance Corporation, as receiver of the Bank, assigned all right, title, and interest in the Roger Note, the Roger Note Security Agreement, the Roger Note Guaranty, the BLP Note, and the BLP Note Guaranty to Revere.  (FAC ¶ 75.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** __UNDERLINE_START__ED CV15-00087 SJO__UNDERLINE_END__                    **DATE:** __November 24, 2015__
__6:13-bk-27611-MH__

Revere alleges that Roger and DJRI breached the Roger Loan by failing to repay the $350,000 principal as and when due in accordance with the loan agreements' terms.  (FAC ¶¶ 78-80.) Revere further alleges that Roger, DJRI, Baleine, and Ebarb breached the BLP Loan by failing to repay the $500,000 principal as and when due in accordance with the loan agreements' terms. (FAC ¶¶ 86-89.)  Revere also requests (1) prejudgment unpaid accrued interest; (2) attorneys' fees, expenses, and costs; (3) the appointment of a receiver to take possession of the Roger Loan collateral; (4) an order directing a public sale of the Roger Note collateral; and (5) a judicial determination on several trusts not at issue in this appeal.  (FAC ¶ 213.)

For the next four years, significant motion practice and contested discovery battles defined the State Court Action.[4]  On August 30, 2013, the State Court issued a non-final minute order granting summary adjudication in Revere's favor as to each of the claims under the Roger/BLP Loans (the "Loan Order").  (Appellant R. at Tab 6, 180.)  In granting summary adjudication, the State Court concluded that the Roger Defendants "are barred from asserting claims or defenses based on the purported agreements to extend or renew the loans, and [Revere] is entitled to rely on the terms of the [Roger/BLP Notes]."  (Appellant R. at Tab 6, 180.)  Thus, the State Court determined that Roger and DJRI are jointly and severally liable to Revere on the Roger Loan and that Roger, DJRI, Baleine, and Ebarb are jointly and severally liable to Revere on the BLP Loan.  (Appellant R. at Tab 22, 834, 858-75.)  In the Loan Order, the State Court expressly required Revere "to prepare and notice the orders on the motions."[5]  (Appellant R. at Tab 6, 180.)

    B.    __Roger, DJRI, and Baleine File for Bankruptcy__

Two months later, on October 25, 2013, Roger filed a voluntary petition for Chapter 7 bankruptcy, establishing a chapter 7 estate (the "Roger Estate").  (*See generally* Appellant R. at Tab 1.)  DJRI and Baleine also filed for Chapter 7 bankruptcy in late October 2013.  (Appellant R. at Tab 1, 4.)

In November 2013, Revere moved to dismiss Roger's, DJRI's, and Baleine's bankruptcies under 28 U.S.C. section 105(a) (under the theory that the bankruptcy was filed with improper purpose)

---

[4]  Revere alleges the Roger Defendants evaded discovery, "leading to over half a dozen motions to compel and $20,000 in monetary sanctions and evidentiary sanctions against the Roger Defendants," and over $1 million in attorneys' fees  in the State Court Action prior to the filing of the bankruptcy petitions.  (Appellant Opening Br. 6, 19, ECF No. 21.)

[5]  Roger contends that "Revere failed to submit proposed judgments prior to the filing of this bankruptcy, as required of it by the Superior Court, and no judgments have ever been entered."  (Appellant R. at Tab 12, 678.)  Revere claims that it lodged a proposed order. (Appellant R. at Tab 22, 834.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**   **ED CV15-00087 SJO**          **DATE: November 24, 2015**
          **6:13-bk-27611-MH**

and, alternately, under 28 U.S.C. section 305(a) (under the theory that the debtor's and creditors' interests are better served by dismissing the bankruptcies). (Appellant R. at Tab 2.) Revere also moved for abstention under 28 U.S.C. section 1334. The Bankruptcy Court granted dismissal only as to DJRI, and denied abstention on the ground that Revere failed to discuss the relevant abstention factors set forth in *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990) (the "*Tucson Estates* factors"). (*See* Roger's Additional Documents ("Appellee R.") at Tab 1, 10, ECF No. 31-1.[6]) Approximately one year later, in December 2014, the Bankruptcy Court issued an order to show cause why the court should not vacate dismissal of DJRI's bankruptcy.[7] (*See* Appellant R. at Tab 32, 1357-58.)

On April 25, 2014, Revere moved for relief from automatic stay under 11 U.S.C. section 362(d)(1) to pursue the State Court Action on the grounds that: (1) the State Court has more expertise over the action, which involves purely state law issues; (2) the State Court Action has nearly concluded; and (3) allowing the State Court to resolve all causes of action among multiple parties will ensure consistent results.[8] (Appellant R. at Tab 9, 288.) The Bankruptcy Court denied the motion on November 19, 2014, largely basing its decision on a concern about judicial efficiency and a cited need to avoid excessive costs to the Roger Estate in defending the State Court Action that would be generated if the stay were lifted. (*See* Appellant R. at Tab 37, 1390-93, 1410-11, 1415, 1421-22.)

### C.    Revere Files a Proof of Claim on the Roger/BLP Notes

On February 24, 2014, Revere filed a proof of claim based on the Roger/BLP Notes in the amount of $3,720,518.68 ("Proof of Claim"). (Appellant R. at Tab 6, 105.) The Proof of Claim stated a $2,973,601.98 secured claim (principal/interest due on the Roger Loan and lender expenses) and a $746,916.70 unsecured claim (principal/interest due on the BLP Loan). (Appellant R. at Tab 6, 105.) In August and September 2014, Trustee and Roger, respectively, filed objections to Revere's Proof of Claim (collectively, "Claim Objection"). (Appellant R. at Tabs 11-12.)

---

[6]  Unless otherwise indicated, citations to Roger's additional documents lodged pursuant to his Motion to Augment are designated as "Appellee R. at Tab [X], [Y]" where "[X]" is the tab number and "[Y]" is the page number. (*See* ECF No. 31.)

[7]  The Court affirmed the Bankruptcy Court's vacation of dismissal as to DJRI in the related appeal, *In re Douglas J. Roger, M.D., Inc., APC*, 5:15-CV-00127-SJO.

[8]  Revere's state law claims against Roger and Baleine were automatically stayed by the filing of their bankruptcy petitions, but Revere's same causes of action against DJRI and Ebarb, who were not involved in chapter 7 proceedings, were not stayed. (Appellant R. at Tab 9, 278.)

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**CASE NO.:**   **ED CV15-00087 SJO**          **DATE:** **November 24, 2015**
           **6:13-bk-27611-MH**

Trustee objected to the Proof of Claim on the grounds that:

- Revere was not entitled to post-petition interest;
- Revere was not entitled to receiver's fees;
- Revere's claimed pre-petition attorneys' fees were unsupported and unreasonable;
- Revere was not entitled to post-petition attorneys' fees;
- Revere failed to properly allocate its lender expenses between Roger, DJRI, and Baleine, or between contract and non-contract claims in the State Court Action; and
- as to the BLP Note, Revere cannot assert a claim against Roger, a general partner of Baleine, under 11 U.S.C. section 723©.

(Appellant R. at Tab 11, 348-54.)

Roger joined in Trustee's objection and filed his objection on the independent grounds that:

- neither he nor Baleine were in default on the loans at the time Revere initiated the State Court Action.  As such, Roger and Baleine owe nothing beyond the principal amount due on the loans; and
- Roger and Baleine are not collaterally estopped from disputing the validity of Revere's claim before the Bankruptcy Court because the State Court's Loan Order was not a final judgment.

(Appellant R. at Tab 12, 675-78.)

On September 17, 2014, Revere responded to the Claim Objection and asked the Bankruptcy Court to deem Trustee's objection a "contested matter."[9]  (*See* Appellant R. at Tab 13, 706-12.)

On September 22, 2014, Revere and State Court receiver Jerry Wang ("Receiver") initiated an adversary proceeding in Bankruptcy Court against Roger seeking non-dischargeability of debt and objecting to discharge under the Roger/BLP Notes.  (*See* Appellee R. at Tab 8.)  In the adversary proceeding, Revere and Receiver alleged that Roger owes Revere at least $3 million, including unpaid principal, pre-petition interests, and pre-petition lender expenses (Appellee R. at Tab 8, 171), and that Roger owes Receiver at least $2 million.  (Appellee R. at Tab 8, 171-72.)

   D.    The Instant Appeal:  The Bankruptcy Court Denies Abstention

---

   [9]   Revere disputed Roger's claim objection to the extent that Roger gave Revere only 15 days' notice of the hearing, which Revere contends is defective under Federal Rule of Bankruptcy Procedure 3007.  (Appellant R. at Tab 19, 782.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:  ED CV15-00087 SJO** | **DATE: November 24, 2015** |
| **6:13-bk-27611-MH** | |

On October 22, 2014, Revere moved the Bankruptcy Court for an order to abstain from hearing any state law issues raised in the Claim Objection, and for an order to stay the Claim Objection proceedings ("Motion to Abstain").  (Appellant R. at Tab 20, 786-823.)  Revere argued that the State Court "has already determined all of the factual and legal issues on all causes of action that [Revere] has asserted against [Roger] in summary adjudication proceedings after four years of state-court litigation," and that the Bankruptcy Court should abstain in the interests of justice, comity, and judicial economy.  (Appellant R. at Tab 20, 791.)  Specifically, Revere argued that:

- excluding the Trustee, insiders, real-estate-secured lenders, the Receiver, and Revere, only $53,000 in general unsecured claims remain.  Trustee's path to litigation over Revere's claim amount and security interest will cost significantly more, and would benefit only Trustee;
- in the State Court Action, non-debtor DJRI is jointly and severally liable with Roger on the same causes of action on the Roger Loan, and non-debtors DJRI and Ebarb are jointly and severally liable with Roger and Baleine on the same causes of action on the BLP Loan;
- no matter what happens in Bankruptcy Court, Revere must still obtain judgment from the State Court against DJRI on the Roger/BLP Loans and against Ebarb on the BLP Loan, and the amount of receiver's and attorneys' fees and costs due on the loans as against DJRI and Ebarb; and
- liquidating Revere's liability and damages claim and adjudicating the fees issues on the Roger/BLP Loans against Roger and the non-debtor defendants in State Court, instead of re-litigating the exact same issues in State Court against the non-debtor defendants and the Bankruptcy Court against Roger, is the most efficient and economical procedure to resolve all of Revere's claims.

(*See* Appellant R. at Tab 20, 791.)  Trustee and Roger each filed oppositions to the Motion to Abstain, and Roger joined in Trustee's opposition.  (Appellant R. at Tab 23; Tab 25.)

The Bankruptcy Court held a hearing on the Motion to Abstain on December 3, 2014 (the "First Hearing").  (Appellant R. at Tab 38.)  The court began by indicating that it was inclined to deny the motion based on its tentative ruling.  (Appellant R. at Tab 38, 1575.)  Revere's counsel argued that (1) the case was "going to be more of a train wreck if you keep this objection to claim," and the process in State Court would be "much more streamlined" than in Bankruptcy Court; (2) there is "nothing in the state court that's not an inherently state law issue"; and (3) whether Revere is liable for receiver's fees is an "unresolved issue[ ] of state law."  (Appellant R. at Tab 38, 1576, 1587.)

The Bankruptcy Court continued the hearing to December 15, 2014 (the "Second Hearing").  (Appellant R. at Tab 39.)  On December 29, 2014, the Bankruptcy Court denied Revere's Motion

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**CASE NO.:**  **ED CV15-00087 SJO**                **DATE:** __November 24, 2015__
             **6:13-bk-27611-MH**

to Abstain, "having made the findings as reflected on the transcript of the proceedings on the Motion" of the First and Second Hearings. (Appellant R. at Tab 36, 1384.) On January 15, 2015, Revere filed the instant appeal with this Court.  (*See* Notice of Appeal.)

## II.   DISCUSSION

Appellant appeals the Order on the grounds that: (1) the Bankruptcy Court erred in its application of the *Tucson Estates* factors; (2) the Bankruptcy Court's refusal to abstain to decrease the value of Revere's claims was a *per se* abuse of discretion; and (3) the interest of comity, alone, required that the Bankruptcy Court abstain.  (*See* Appellant Opening Br.)

Roger contends that:  (1) the appeal should be dismissed because the Order is not a final appealable order; (2) Revere's "Statement of Facts" should be disregarded for being "largely conjectural, argumentative, irrelevant, and not supported by the record"; and (3) the Bankruptcy Court did not abuse its discretion in denying Revere's motion for abstention.  (*See* Roger Br., ECF No. 29.)

Trustee argues that the Bankruptcy Court did not:  (1) err in weighing the *Tucson Estates* factors; (2) improperly assert control over state law issues; (3) err in failing to credit Revere's argument for a per se "first-to-file" rule; or (4) err in failing to credit Revere's argument that "prejudice" warranted abstention.  (*See* Trustee Br., ECF No. 30.)

### A.   Motion to Augment

Before considering the merits of the instant appeal and Motion to Dismiss, the Court first rules on the Motion to Augment.  (*See* Mot. to Augment, ECF No. 31.)  Pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(2), the appellee "may file with the bankruptcy clerk and serve on the appellant a designation of additional items to be included in the record" within 14 days after being served with the appellant's designation of documents. Fed. R. Bankr. P. 8009(a)(2).  But "[i]f anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected, and a supplemental record may be certified and transmitted . . . by the court where the appeal is pending."  Fed. R. Bankr. P. 8009(e)(2)©.

Although Roger's counter-designation of items to be added to the record was filed on March 11, 2015, over a month after the 14-day deadline imposed by Federal Rule of Bankruptcy Procedure 8009(a)(2), the Court finds consideration of the additional items proper because the additional documents—the parties' briefs and court orders from the Bankruptcy Court action related to receiver's fees—are relevant to the issues raised in the instant appeal.  (Mot. to Augment 2.) Alternatively, the Court takes judicial notice of the additional documents, which are matters of public record, pursuant to Federal Rule of Evidence 201. Fed. R. Evid. 201(b)(1) ("The court may

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:**   **ED CV15-00087 SJO** | **DATE: <u>November 24, 2015</u>** |
|                **6:13-bk-27611-MH** | |

judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction."); *see also Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (citing Fed. R. Evid. 201); *In re E.R. Fegert, Inc.*, 887 F.2d 955, 958 (9th Cir. 1989) (finding that lower court did not err in granting judicial notice of the records in underlying bankruptcy matter). Accordingly, the Court **GRANTS** Roger's Motion to Augment and considers the additional documents in the Court's review of the instant appeal and Motion to Dismiss.

      B.    <u>Jurisdiction</u>

Before reaching the merits of the Bankruptcy Court's Order, the Court must first determine whether it has jurisdiction to hear the instant appeal. The question of jurisdiction is the subject of Roger's Motion to Dismiss, in which he contends that the Order was not final and that, alternatively, Revere failed to seek leave to appeal. (*See generally* Mot. to Dismiss, ECF No. 19.)

The jurisdiction of a federal district court to entertain an appeal from a bankruptcy court is governed by 28 U.S.C. section 158(a), which provides in relevant part: "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; . . . and (3) with leave of the court, from other interlocutory orders and decrees." 28 U.S.C. § 158(a).

"[I]t is clear from the legislative history that Congress intended to give the district court jurisdiction to review remand and abstention decisions of the bankruptcy courts." *In re Borelli*, 132 B.R. 648, 649 (N.D. Cal. 1991); *see also In re Eastman*, 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995) (holding that the language of 28 U.S.C. § 305© prohibiting courts of appeals and the Supreme Court from hearing appeals from a bankruptcy court's decision to abstain does not apply to district courts or bankruptcy appellate panels); *accord, Labankoff v. GMAC Mortg., LLC*, No. NC 09-01294, 2010 WL 2384543, at *3 (B.A.P. 9th Cir. 2010). Appellant filed a Notice of Appeal with the Bankruptcy Court on January 6, 2015, within the 14-day period prescribed by Federal Rules of Bankruptcy Procedure 8002(a)(1) and 8003(a)(1) (Notice of Appeal, ECF No. 1), and accordingly, the Court has jurisdiction to hear Revere's appeal of the Order. Fed. R. Bankr. P. 8002(a)(1), 8003(a)(1). The Court therefore **DENIES** Roger's Motion to Dismiss.

///
///

      C.    <u>Standard of Review</u>

Having established that the Court has jurisdiction over the instant appeal, the Court examines the standard under which it must review the Order. "Abstention decisions are reviewed under the abuse of discretion test." *In re Consol. Pioneer Mortg. Entities*, 205 B.R. 422, 424 (B.A.P. 9th Cir.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:**   **ED CV15-00087 SJO** | **DATE:** **November 24, 2015** |
|           **6:13-bk-27611-MH** | |

1997) (citation omitted). Courts apply a two-part test to determine whether an abuse of discretion has occurred: "First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested." *In re Sullivan*, 522 B.R. 604, 611 (B.A.P. 9th Cir. 2014) (citation omitted). Then, if the bankruptcy court identified the correct legal standard, the reviewing court must determine if the bankruptcy court's application of the law was "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (citation, quotation marks, and formatting omitted). "If any of these three apply, only then [is a reviewing court] able to have a 'definite and firm conviction' that the [lower] court reached a conclusion that was a 'mistake' or was not among its 'permissible' options, and thus that it abused its discretion by making a clearly erroneous finding of fact." *Id.*; *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (citation omitted) (stating that an abuse of discretion occurred if there is: "(1) reliance on an improper factor, (2) omission of a substantial factor, or (3) a clear error of judgment in weighing the correct mix of factors"). The reviewing court may affirm the decision "on any ground fairly supported by the record." *Lee v. United States*, 809 F.2d 1406, 1408 (9th Cir. 1987)).

       D.    Legal Standard

Under the permissive abstention standard of 28 U.S.C. section 1334(c)(1) ("Section 1334"), a bankruptcy court may abstain from hearing a particular proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law." *In re Eastport Assocs.*, 935 F.2d 1071, 1075 (9th Cir. 1991) (quoting 28 U.S.C. § 1334(c)(1)). Abstention is proper only in the "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983) (internal citation omitted) (citing *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)).

Bankruptcy courts are instructed to consider the following factors in determining whether permissive abstention is appropriate:

     (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,
     (2) the extent to which state law issues predominate over bankruptcy issues,
     (3) the difficulty or unsettled nature of the applicable law,
     (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court,
     (5) the jurisdictional basis, if any, other than 28 U.S.C. section 1334,
     (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,
     (7) the substance rather than form of an asserted 'core' proceeding,

MINUTES FORM 11
CIVIL GEN               Page 9 of  23          Initials of Preparer _____
                                        __ : __

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**   **ED CV15-00087 SJO**               **DATE: <u>November 24, 2015</u>**
              **6:13-bk-27611-MH**

> (8) the feasibility of severing state law claims from core bankruptcy matters to allow
> judgments to be entered in state court with enforcement left to the bankruptcy court,
> (9) the burden of [the bankruptcy court's] docket,
> (10) the likelihood that the commencement of the proceeding in bankruptcy court
> involves forum shopping by one of the parties,
> (11) the existence of a right to a jury trial, and
> (12) the presence in the proceeding of nondebtor parties.

*Eastport Assocs.*, 935 F.2d at 1075-76 (quoting *Tucson Estates,* 912 F.2d at 1166 (citation omitted)).   A "head count" of these factors does not necessarily "yield the answer with mathematical certainty." *In re Franklin*, 179 B.R. 913, 928 (Bankr. E.D. Cal. 1995).   Rather, the factors serve as "an intellectual matrix to guide the judge who considers abstention and to enable a reviewing court to ascertain whether there has been an abuse of discretion." *Id.* (citing *Eastport Assocs.*, 935 F.2d at 1075).

   E.   <u>Analysis</u>

First, the Court finds that the Bankruptcy Court applied the correct legal standard—Section 1334 and the *Tucson Estates* factors—as the basis underlying its Order denying abstention.   (*See* Appellant R. at Tab 39, 1697-98.)

Given the Bankruptcy Court applied the correct legal standard, the Court reviews the Bankruptcy Court's application of the law to the extent that its reasoning is reflected in the record.   The Court discusses (1) the Bankruptcy Court's application of the *Tucson Estates* factors; (2) whether the court refused to abstain to decrease the value of Revere's claim, constituting per se abuse; and (3) whether the interest of comity, alone, required abstention.   (*See* Appellant Opening Br.)   For the following reasons, the Court concludes that the Bankruptcy Court abused its discretion by neglecting certain facts and arriving at certain unsupported conclusions.

   1.   <u>The Bankruptcy Court Erred in its Application of the *Tucson Estates* Factors</u>

The Bankruptcy Court discussed ten of the *Tucson Estates* factors during the First and Second Hearing, ultimately concluding that "on that record, for the reasons cited in the oppositions to the motion to abstain, I'm going to deny" the motion.   (*See* Appellant R. at Tab 39, 1697-98.)   Thus, the Court also relies on Trustee's and Roger's relevant reasons in determining whether the Bankruptcy Court abused its discretion.   *See Love*, 915 F.2d at 1246 n.2 (citation omitted) (permitting court to affirm "on any ground fairly supported by the record").   The Court reviews each *Tucson Estates* factor in turn.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:  ED CV15-00087 SJO** | **DATE:** <u>November 24, 2015</u> |
| **6:13-bk-27611-MH** | |

a.   <u>*The Effect or Lack Thereof on the Efficient Administration of the*</u>
<u>*Estate if a Court Recommends Abstention*</u>

Based on the record, it does not appear as though the Bankruptcy Court addressed this factor. To the extent the Bankruptcy Court found this factor to be neutral,[10] the Court finds clear error, as the facts strongly suggest abstention would benefit the efficient administration of the Roger Estate. Trustee acknowledged that the Bankruptcy Court "cannot fully administer the case . . . until all claims objections are resolved."  (Appellant R. at Tab 23, 1165.)  One of Roger's objections to the Proof of Claim is that "neither he nor Baleine were in default on the loans."  (Appellant R. at Tab 22, 834, 858-75.)  Thus, until this threshold issue of liability is resolved, the Bankruptcy Court cannot administer the Roger Estate.  Because the State Court already adjudicated this issue and need only enter its Loan Order and judgment against the Roger Defendants and determine fees on a post-judgment motion (Appellant Opening Br. 34), abstaining on the state law issues would clearly facilitate the administration of the Roger Estate.  As the *Tucson Estates* court held:

> The bankruptcy court found also that interests in judicial economy supported letting the state litigation continue, given its six-year length and status . . . . Deferring to the state court would pose no financial hardship to the debtor.  The state litigation would not interfere with the bankruptcy proceedings but would in fact facilitate them by liquidating 1,600-2,300 class action plaintiff claims.

*In re Tucson Estates*, 912 F.2d at 1169.

Trustee also argued that "because [the Bankruptcy Court] has denied Revere's [motion for relief from stay], the State Court Action against the Debtor cannot be adjudicated until either the Roger Bankruptcy Case is closed, or Revere later succeeds in obtaining relief from stay."  (Appellant R. at Tab 23, 1165.)  In two of the related appeals before this Court, the Court found abuse of discretion and reversed the Bankruptcy Court's orders denying Revere's motions for relief from stay as to DJRI and Baleine.[11]  As such, the State Court Action can now be adjudicated in a single forum—the State Court—after which the Bankruptcy Court can administer the bankruptcy estate.

---

[10]  According to Trustee, the Bankruptcy Court omitted this factor "[p]resumably" because the court considered it neutral.  (Trustee Br. 17.)

[11]  *See In re Douglas Jay Roger*, No. 14-cv-02515-SJO; *In re Baleine, LP*, No. 14-cv-02513-SJO.

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** __ED CV15-00087 SJO__          **DATE:** <u>November 24, 2015</u>
                  __6:13-bk-27611-MH__

The Bankruptcy Court erred to the extent it found this factor to be neutral. The record supports finding that abstention would better serve the efficient administration of the Roger Estate.[12]

        b.    *<u>The Extent to Which State Law Issues Predominate Over Bankruptcy</u>*
              *<u>Issues</u>*

Appellant and Appellees dispute what issues are presented in the Claim Objection. (*See* Appellant Opening Br. 34-36; Trustee Br. 13-14; Roger Br. 11-12.) Essentially, Trustee and Roger argue that the state law issues are "overshadowed by significant bankruptcy issues," and that the only state law issues required to be litigated are the entitlement and reasonableness of fees, which the Bankruptcy Court is capable of adjudicating. (Appellant R. at Tab 23, 1166-68.) On the other hand, Revere argues that the primary issues presented in the Claim Objection are state law issues—liability and the amount due on the Roger/BLP Loans—which the State Court must adjudicate. (Appellant R. at Tab 13, 706.) Revere points out that the bankruptcy issues are premature because, until Trustee liquidates Roger's assets in the State Court, "neither the Bankruptcy Court nor the parties can determine whether or not [Revere] is a fully-secured creditor in this bankruptcy—i.e., whether or not the amount that the Trustee collects from liquidating Roger's assets equals or exceeds the amount of [Revere]'s allowed secured claim." (Appellant R. at Tab 13, 706.)

While the Bankruptcy Court did not explicitly state on the record whether it found that state law issues predominate the Claim Objection, the Bankruptcy Court appeared to characterize this factor as weighing against abstention, and Appellant and Appellees do not dispute that this was the Bankruptcy Court's conclusion. (*See* Reply Br. 13; Trustee Br. 9-10; Roger Br. 23.) Along with its discussion of the other factors weighing against abstention, the Bankruptcy Court stated: "I understand the state law issue argument raised by Revere. Here, you do have a mix of federal and state laws. The issue of bifurcating the claim into secured and unsecured, whether there's an entitlement to post-petition interest."[13] (Appellant R. at Tab 39, 1698.)

------------------------------------------------------------

[12]   Indeed, during the hearing in which the Bankruptcy Court dismissed DJRI from bankruptcy, the Bankruptcy Court concluded that "the state court is more familiar with the facts of the case to litigate any remaining issues (e.g., fraud. See Ex. 4, 7) and commencing the bankruptcy administration now would seriously prolong RFCs' wait for resolution and distribution, not to mention raise additional costs and expenses." (Appellant R. at Tab 47, 1938.)

[13]   Trustee and Roger concede that the principal amount and pre-petition interest are due on the Roger/BLP Notes. (Appellant R. at Tab 25, 1227, 1231-32.)

JS-6                        UNITED STATES DISTRICT COURT
                            CENTRAL DISTRICT OF CALIFORNIA

                               CIVIL MINUTES - GENERAL


CASE NO.:   **ED CV15-00087 SJO**              DATE: **November 24, 2015**
            **6:13-bk-27611-MH**


However, during the same hearing, the Bankruptcy Court defended its application of the *Tucson Estates* factors by analogizing that opinion to "a situation where the Bankruptcy Court is dealing with **a claim objection based on state law issues**."  (Appellant R. at Tab 39, 1698, 1724) (emphasis added).  Importantly, Roger asserts that he did not default on the loans, which is a state law issue.  Further, during the First and Second Hearings, the Bankruptcy Court devoted the lengthiest discussions and appeared most concerned about the fees that had been incurred in the State Court Action and bankruptcy proceedings—which is an issue of state law—at the expense of more fully addressing the other state law and bankruptcy issues.  This constitutes an independent basis for finding an abuse of discretion.  *See Wells Fargo*, 571 F.3d at 959 (holding that, in determining class certification, the "district court abused its discretion in relying on [employer's uniform policy] to the near exclusion of other factors relevant to the predominance inquiry").  Finally, the Bankruptcy Court should have afforded the issue of attorneys' less weight to this factor than it appeared to have done, because Revere sought abstention only as to the state law issues rather than the entire Claim Objection.

In light of its own factual findings and those presented by the parties, the Bankruptcy Court's conclusion that this factor weighed against abstention was unsupported by inferences drawn from the record.  *See Hinkson*, 585 F.3d at 1262.  Accordingly, the Bankruptcy Court erred.

                c.      *The Difficulty or Unsettled Nature of the Applicable Law*

Courts should apply the *Tucson Estates* factors flexibly, as no one factor is necessarily determinative.  "At the same time, because section 1334(c)(1) is concerned with comity and respect for state law, whether a case involves unsettled issues of state law is always significant."  *Matter of Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) (citing *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483 (1940)).

During the First Hearing, the Bankruptcy Court and counsel for Revere went back and forth on the issues of entitlement and liability for receiver's fees under applicable state contract law.  Counsel asked, "You think that is settled in state law?  Because my impression from the parties is it's not settled," to which the court responded, "No.  My understanding is the state court may be able to do it but may not so—".  Counsel interrupted, "And again, where you have an issue of unsettled state law, that is a factor that militates in favor of abstention."  (Appellant R. at Tab 38, 1584.)  The Bankruptcy Court did not comment further on the nature of the state law.

During the Second Hearing, the Bankruptcy Court stated, "This Court is certainly able to adjudicate state law issues.  There's nothing difficult or unsettled here . . . . While there is the pending state court action, this Court can determine both the receiver's fees, Revere's fees, along with the reasonableness of the fees."  (Appellant R. at Tab 39, 1698.)  Roger added that the

MINUTES FORM 11                                                              __ : __
CIVIL GEN                        Page 13 of   23              Initials of Preparer _____

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:**  **ED CV15-00087 SJO** | **DATE: November 24, 2015** |
| **6:13-bk-27611-MH** | |

Bankruptcy Court "is as able as the State Court to determine the reasonableness of [receiver's and attorneys'] fees."  (Appellant R. at Tab 25, 1232.)

The Court finds that the Bankruptcy Court gave insufficient weight to the complexity of determining the "reasonableness" of fees, particularly in light of the protracted and contentious nature of the State Court Action.  The Bankruptcy Court noted that the high receiver's fees "might not be an issue if I've determined reasonableness first," to which counsel for Revere replied, "My point is, how do you determine reasonableness? . . . . [Y]ou're talking about . . . hundreds of pages of bills . . . you—your Honor—looking at 40,000 pages of documents."  The Bankruptcy Court replied, "I don't think the state court wants to do that, either."  After some back and forth, counsel repeated, "You have to look at 40,000 documents.  You have to look at all that," to which the court added, "Every single line."  (Appellant R. at Tab 38, 1580-81.)  Notwithstanding the sheer volume of documents that must be examined to determine the appropriate fee award, determining the reasonableness of fees is discretionary, and not a mechanical calculation.  *See Hasan v. Contra Costa Cnty.*, 45 Fed. App'x. 795, 796 (9th Cir. 2002) (citations omitted) ("Like federal law, California law commits the determination of  reasonable attorneys' fees to the discretion of the trial courts."); *Sw. Media, Inc. v. Rau*, 708 F.2d 419, 422 (9th Cir. 1983) (citation omitted) ("A trial court has discretion to determine reasonable compensation for services rendered in bankruptcy proceedings.").

Despite being aware of the complexity involved in determining reasonableness of fees, and in contravention of respect for state law, the Bankruptcy Court categorically decided that it was "certainly able to adjudicate state law issues."  (Appellant R. at Tab 39, 1698.)  Although the Bankruptcy Court may well desire to adjudicate the fees issue, the State Court, which presided over years of litigation involving numerous discovery disputes and the incurrence of $1,000,000 in attorneys' fees, is better suited to resolve the issues.  *See PLCM Grp., Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (citations omitted) (emphasis added) (recognizing that the "experienced trial judge is the best judge of the value of professional services **rendered in his court**").  Finally, the State Court's Loan Order is inapposite to the nature of the state law, as the amount of receiver's and attorneys' fees has yet to be determined.

Accordingly, the Court finds that the Bankruptcy Court improperly discounted the complexity of state law and the familiarity the trial court has with the State Court Action, which is particularly significant because permissive abstention "is concerned with comity and respect for state law." *Matter of Chi.*, 6 F.3d at 1189 (citations omitted).

        d.    *The Presence of a Related Proceeding Commenced in State Court or Other Nonbankruptcy Court*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:**  **ED CV15-00087 SJO** | **DATE: November 24, 2015** |
| **6:13-bk-27611-MH** | |

During the Second Hearing, the Bankruptcy Court found that "[w]hile there is the pending state court action, this Court can determine both the receiver's fees, Revere's fees, along with the reasonableness of the fees."  (Appellant R. at Tab 39, 1698.)  The Bankruptcy Court did not expound on its reasoning.  Trustee argued that there was little overlap of issues between the State Court Action and the Claim Objection, and "most of the grounds raised by the Claim Objection involve issues that only [the Bankruptcy Court] may adjudicate.  Even the calculation of attorneys' fees, which raises issues of reasonableness of fees under California state law, will be different in the Bankruptcy Court, because the only fees allowable in bankruptcy are those incurred prior to the Petition Date."  (Appellant R. at Tab 23, 1169.)  Roger added that "all of the discovery done in the state court may be used before this court."  (Appellant R. at Tab 25, 1233.)

The principles of comity and efficiency contradict the Bankruptcy Court's express reasoning as well as the arguments put forth by both Roger and Trustee.  "Courts in applying [the provision granting bankruptcy courts exclusive jurisdiction over debtor's property] defer to state courts in many cases that concern estate property."  *Tucson Estates*, 912 F.2d at 1168 (emphasis omitted); *see also In re Ozai*, 34 B.R. 764, 766 (B.A.P. 9th Cir. 1983) (finding no error in abstaining to enable state court to hear claims on deed's validity); *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987) (finding no error in abstaining to enable state court to determine rights in oil and gas lease).  The same applies here—the Bankruptcy Court should have afforded more weight to the presence of the State Court Action.

Not only does a related state court action exist, but that action is near completion and boasts a docket of 129 entries and 20 banker's boxes' worth of documents.  (Appellant R. at Tab 22, 835.)  Although the Bankruptcy Court repeatedly expressed its concerns regarding the complexity of the case and the enormous fees that had been incurred,[14] it disregarded the extremely advanced stage of the State Court Action when ruling on abstention.  For instance, the Bankruptcy Court boldly stated that given that the State Court Action was filed back in 2010, "I don't think state court is the freeway to relief that you suggest it is.  As you know, bankruptcy filings are down.  I have to justify my existence.  I want to review those 40,000 pages of documents."  (Appellant R. at Tab 39, 1724-25.)  There is no logical reason for the Bankruptcy Court to determine the issue of fees, as it would have to incur substantial costs and time—Revere estimates that it would take at least one month—to familiarize itself with the four years' worth of fees incurred in the State Court Action.  (Appellant R. at Tab 22, 835.)  Neither the court nor Trustee or Roger provide evidence to rebut these findings.

---

[14]   In particular, the Bankruptcy Court acknowledged the following:  "It is just going to be massive administrative fees until the parties settle at some point. . . . [A]nd I can keep ruling on these various things, and you're just going to keep on running up fees. . . .The fees are just going to totally control these cases."  (Appellant R. at Tab 39, 1671-73.)

JS-6                        **UNITED STATES DISTRICT COURT**
                            **CENTRAL DISTRICT OF CALIFORNIA**

                            **CIVIL MINUTES - GENERAL**


**CASE NO.:   ED CV15-00087 SJO**                **DATE:** <u>November 24, 2015</u>
             **6:13-bk-27611-MH**


The Bankruptcy Court committed clear error by severely under-appreciating the complexity and stage of the State Court Action and by concluding that, although a related contentious, four-year state action existed, this factor nevertheless weighed against abstention.  *See Wells Fargo*, 571 F.3d at 957 (discussing the third abuse of discretion prong: "mulling the proper factors but committing clear error in weighing them").

> e.      <u>*The Jurisdictional Basis, If Any, Other Than Section 1334*</u>

Neither the Bankruptcy Court nor Trustee or Roger addressed this factor.  Regardless, the only federal jurisdictional basis for this action is bankruptcy jurisdiction, so this factor neither weighs in favor of nor against a finding that the Bankruptcy Court abused its discretion.

> f.      <u>*The Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case*</u>

The Bankruptcy Court concluded that "[t]his is a core matter, allowance/disallowance of the claim," which suggests that the Bankruptcy Court characterized the Claim Objection as highly related to the main bankruptcy case and therefore that this factor weighed against abstention.  (Appellant R. at Tab 39, 1698.)  "Core proceedings" are those that "invoke a substantive right created by the federal bankruptcy law" or "would have not existence outside of the bankruptcy."  *See Eastport Assocs.*, 935 F.2d at 1076.  Trustee argued to the Bankruptcy Court that "[s]ucceeding on the Claim Objection will therefore result in disallowance of a significant unsecured claim, thereby influencing the distribution of liquidated assets in this case."  (Appellant R. at Tab 23, 1169.)

While the Claim Objection does require determining whether the claim will be allowed or disallowed, the determination of which would significantly affect the administration of the Roger Estate, it also involves the threshold, non-"core" issue of the liability and amount of damages owed to Revere.  As counsel for Revere explained in the First Hearing:  "The administration of the estate, if you look at the *Tucson Estates* factors, it says it is not claims litigation.  It literally means administration."  (Appellant R. at Tab 38, 1591.)  In *Tucson Estates*, the court concluded that a proceeding is not "core" because "parties did not dispute whether claims should be disallowed, but instead whether [plaintiffs] had claim to bring to bankruptcy court."  *Tucson Estates*, 912 F.2d at 1168.

Accordingly, the Bankruptcy Court's characterization of the Claim Objection merely as allowance/disallowance of the claim was erroneous to the extent it ignored the existence of issues not central to the Roger bankruptcy.  *See Wells Fargo*, 571 F.3d at 959 (finding abuse where court relied on one piece of evidence and ignored other relevant facts).

> g.      <u>*The Substance Rather Than Form of Asserted "Core" Proceeding*</u>

JS-6                    **UNITED STATES DISTRICT COURT**
                       **CENTRAL DISTRICT OF CALIFORNIA**

                         **CIVIL MINUTES - GENERAL**


**CASE NO.:** __ED CV15-00087 SJO__            **DATE:** <u>November 24, 2015</u>
           __6:13-bk-27611-MH__


While the Bankruptcy Court correctly found that the form of the Claim Objection was "core," *see Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987) (finding that a proof of claim and its claim objections are "core" in form), the record indicates that the Bankruptcy Court did not sufficiently consider the substance of the Claim Objection to determine whether it was, in fact, a claim objection.

During the First Hearing, Revere's counsel argued that there was "nothing in the state court that's not an inherently state law issue.  All that the trustee did was dress this up as a claim objection which—" at which point the Bankruptcy Court interrupted "[w]ell, I mean it is a claim objection." Revere's counsel then explained:

> Look to the substance of what's happening.  Look at what this is . . . .  This is a Chapter 7.  There's no business to save.  There's no rehabilitation here of a business.  There's no liquidation to other creditors of anything material.  We've showed you that there's $50,000 in legitimate creditors besides Revere . . . .  There's no reason to fight for those $50,000 of creditors and incur hundreds of thousands of dollars in fees if the state court has its own procedure to litigate fees.

(Appellant R. at Tab 38, 1588-89.)  Revere's counsel went on to describe its view of the *Tucson Estates* factors, and the Bankruptcy Court did not comment on whether the substance of the Claim Objection was "core."

The Bankruptcy Court apparently failed to give sufficient weight to the substance of the Claim Objection.  First, by characterizing the proceeding simply as "allowance/disallowance of the claim," the Court overlooked the other issues involved.  *See* Section II.D.1.f., *supra*.  Because significant issues raised in the Claim Objection do not require the Bankruptcy Court's adjudication, much of the substance of the Claim Objection is not "core."  *See Tucson Estates*, 912 F.2d at 1168 ("The issue that is disputed–what the debtor's interest in that property is (i.e., what use can be made of the property)— is governed by state law, and need not be resolved by a federal court."); *In re Loretto Winery, Ltd.*, 898 F.2d 715, 718 (9th Cir. 1990) ("Whether the lien is enforceable against a bona fide purchaser is determined under state law.").

In sum, the Bankruptcy Court erred by neglecting to consider the substance of the Claim Objection and by therefore concluding that this factor weighed against abstention.[15]

---

[15]   Notwithstanding the Court's conclusion that the Bankruptcy Court erred in failing to consider the substance of the Claim Objection, the record does not support Revere's assertion that the Trustee "only objected to [Revere]'s claim to create 'core' jurisdiction," and that "whether or not [Revere] had a secured claim or an unsecured claim, the Trustee

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   **ED CV15-00087 SJO**          DATE: **November 24, 2015**
          **6:13-bk-27611-MH**

> h.   *The Feasibility of Severing State Law Claims From Core Bankruptcy*
> *Matters to Allow Judgments to Be Entered in State Court With*
> *Enforcement Left to the Bankruptcy Court*

The Bankruptcy Court stated during the Second Hearing that the "core matter" being the allowance/disallowance of the claim, "[a]ny other pending issues in state court appear distinct and severable."  (Appellant R. at Tab 39, 1698.)  The Bankruptcy Court thus found that this factor favored abstention.[16]

The State Court's Loan Order determined that Revere could rely on the terms of the Roger/BLP Loans against the Roger Defendants.  It is feasible to sever these issues of liability and amounts due on the loans to permit "completion of the state court litigation while reserving the judgment's enforcement to the bankruptcy court."  *See Tucson Estates*, 912 F.2d at 1169.  The Court did not err in arriving at this conclusion.

> i.   *The Burden of the Bankruptcy Court's Docket*

The Bankruptcy Court said this factor weighed against abstention because the Claim Objection "is not a burden on the Court's docket.  My guess is the Bankruptcy Court has more availability on its docket than the state court."  (Appellant R. at Tab 39, 1698.)  Later in the same hearing, when Revere's counsel took issue with the court's application of this *Tucson Estates* factor, the Bankruptcy Court stated, "As you know, bankruptcy filings are down. I have to justify my existence. I want to review those 40,000 pages of documents."  (Appellant R. at Tab 39, 1724-25.)

While, in all likelihood, the Bankruptcy Court has the most familiarity with its own docket, the Bankruptcy Court committed clear error by acknowledging, but failing to truly appreciate, the

---

did not really want to litigate the Trustee's claim objection." (Appellant Opening Br. 38, 20.) Instead, Trustee proposed a bifurcation valuation first, and saw little "reason to do much litigation over the unsecured portion," because the split between secured and unsecured claims "impacts whether or not the trustee is obligated under case law to abandon all of these partnerships' interests." (Appellant R. at Tab 38, 1595-96.)

[16]   According to Trustee and Roger, the Bankruptcy Court concluded that this factor weighed against abstention. (*See* Trustee Br. 9-10, 16; Roger Br. 23.)  However, if state law claims are found to be easily severed, this factor would favor abstention. *See Tucson Estates*, 912 F.2d at 1169.  To the extent the Bankruptcy Court concluded that this factor disfavored abstention, it erred.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**CASE NO.:**  **ED CV15-00087 SJO**          **DATE:** __November 24, 2015__
              **6:13-bk-27611-MH**

massive burden that proceeding with the Claim Objection would have on its docket.  As discussed in Section II.D.1.d., *supra*, the Bankruptcy Court's express desire to "justify its existence" is not a logical application of this factor.  Even if it were true that the Bankruptcy Court has more availability on its docket than the State Court, denying abstention necessarily imposes "an enormous expenditure of scarce judicial resources."  *See In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 428 (Bankr. S.D. Tex. 1987) ("The delay attendant upon abstention from a proceeding, therefore, must be compared with the effect adjudicating the proceeding has upon the allocation of a court's scarce judicial resources to essential matters concerning administration of all estates.").

j.    *The Likelihood that the Commencement of the Proceeding in Bankruptcy Court Involves Forum Shopping By One of the Parties*

The Bankruptcy Court found this factor was neutral because, "candidly, I think both parties are forum shopping.  Revere wants it out, the debtors want it in."  (Appellant R. at Tab 39, 1698.)  First, the Bankruptcy Court misapplied this factor—it should have considered the likelihood that the party who commenced the bankruptcy proceeding is "forum shopping **to avoid imminent defeat in state court**."  *Tucson Estates*, 912 F.2d at 1169 (emphasis added).  The record, however, leads to only one permissible conclusion:  that Roger, by requesting the Bankruptcy Court re-litigate whether he defaulted on the loans, an issue that had been litigated in State Court for several years, is the party engaging in forum shopping.  As is discussed in Section II.D.1.g., *supra*, the liability and amount due on the Roger/BLP Notes is not "core" to the Roger Estate.  *See In re Republic*, 81 B.R. at 428 (emphasis added) (considering whether proceeding was filed in bankruptcy court "to gain some adversarial advantage rather than for the reason that the proceeding is so related to the estate that failure to adjudicate the proceeding within a bankruptcy forum would cause harm to or impede efficient administration of the estate").

Roger filed for bankruptcy only after four long years litigating in State Court and less than a month after the State Court granted summary adjudication against Roger.  In this respect, this case is similar to *Tucson Estates*, in which "the debtor and officers waited until six years after the commencement of the state court litigation and until they had lost a very important summary judgment motion, to file for bankruptcy," which "suggests that the filing's purpose was to avoid an unfavorable state court judgment."  *Tucson Estates*, 912 F.2d at 1169.  A Fifth Circuit court applying this *Tucson Estates* factor described the converse scenario:

It was not until after all the Motions for Summary Judgment were filed that [plaintiff], clearly conscious of the fact that this Court had previously ruled against them on their Application for Preliminary Injunction, decided that they wanted to try this suit in state court.  Allowing the [plaintiff] to leave this Court and go back to state court **after such delay would only foster improper forum shopping** and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   **ED CV15-00087 SJO**              DATE: **November 24, 2015**
            **6:13-bk-27611-MH**

gamesmanship.  It would also unnecessarily **increase the legal fees and expenses** of all parties, as the state court would inevitably have to spend time becoming familiar with the lawsuit, a task which would **assuredly require substantial time and more hearings**.  Therefore, this factor militates against abstention and in favor of keeping the Adversary Proceeding in this Court.

*In re Doctors Hosp. 1997, L..P.*, 351 B.R. 813, 850 (Bankr. S.D. Tex. 2006) (emphases added). Further, that court in *In re Doctors Hospital* noted that if it kept the adversary proceeding, "all that is left to be done is to rule on the Motions for Summary Judgment and then hold a trial on any issues for which summary judgment is not granted," much like what would happen if the Bankruptcy Court abstained from the state law issues and enabled the State Court to enter the judgments on which it had already ruled.  *In re Doctors Hosp.*, 351 B.R. at 850 n.32.

Thus, the Bankruptcy Court mis-characterized this factor as neutral when the record establishes a high likelihood that Roger was the entity engaging in forum shopping.

k.    *The Existence of a Right to a Jury Trial*

The Bankruptcy Court correctly pointed out that the Claim Objection would not require a jury trial. (Appellant R. at Tab 39, 1698.)  The Bankruptcy Court did not commit clear error in concluding that this factor was neutral.

l.    *The Presence in the Proceeding of Nondebtor Parties*

The Bankruptcy Court concluded that "[w]e do have the key players.  Other than perhaps Ebarb . . . I think all of the non-debtor parties appear to be owned directly or indirectly by Roger." (Appellant R. at Tab 39, 1697.)  Although the Bankruptcy Court's position with respect to this factor is not clear, Trustee interprets this statement as indicating that the Bankruptcy Court found this factor to be neutral.  (Trustee Br. 17.)

The Court finds that the Bankruptcy Court improperly discounted Ebarb's presence.  The State Court determined Ebarb to be jointly and severally liable with Roger on the BLP Loan.  (Appellant R. at Tab 22, 834.)  In other words, the Bankruptcy Court's denial of abstention requires Revere to litigate the same issues regarding the BLP Loan against Roger in Bankruptcy Court and against Ebarb (as well as DJRI and Baleine) in State Court, which creates a risk of inconsistent results and duplicative litigation.  This factor weighs strongly in favor of abstention, and to the extent the Bankruptcy Court concluding that this factor was neutral, it erred.

m.    Conclusion Regarding *Tucson Estates* Factors

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**


**CASE NO.:**   **ED CV15-00087 SJO**                    **DATE:** **November 24, 2015**
                **6:13-bk-27611-MH**


The role of a reviewing court is "'not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record.'"  *Wood v. GCC Bend*, LLC, 422 F.3d 873, 878 (9th Cir. 2005) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980)).

The Court finds that the Bankruptcy Court erred in reaching several of its conclusions regarding the *Tucson Estates* factors.  During the Second Hearing, the Bankruptcy Court told counsel for Revere, "I don't find myself so out of line with *Tucson Estates*," to which Revere's counsel contended that the Bankruptcy Court's "discretion is significantly narrowed in a situation where it is not at all clear that the claim being resolved would have a material impact on the administration of the estate, which means liquidation of assets, or that it would be less expensive and more rapidly taken care of in the Bankruptcy Court than the state court . . . . "  The Bankruptcy Court responded:

> So you read *Tucson* [*Estates*]—see, many of these cases I think are upholding the Bankruptcy Court's exercise of discretion to abstain.  But I don't think it stands for the converse, that it requires in a situation where the Bankruptcy Court is dealing with a claim objection based on state law issues to have —as you seem to advance it, that I'm compelled to abstain.

(Appellant R. at Tab 39, 1723-24.)  While the Bankruptcy Court was correct in finding that it was not compelled to abstain, it erred in its application and weighing of the *Tucson Estates* factors. The Bankruptcy Court addressed 10 of the 12 factors and concluded that they weighed against abstention.  However, an examination of the record and applicable law reveals that 10 factors weighed in favor of abstention, while the remaining two factors were neutral.  On balance, the Bankruptcy Court failed to give any weight to certain critical facts and reached improper conclusions regarding other key facts.  *See Parra v. Bashas', Inc.*, 536 F.3d 975, 977-78 (9th Cir. 2008) (citation omitted) (finding abuse of discretion where the trial court "mulls the correct mix of factors but makes a clear error of judgment in assaying them").

The Court acknowledges that several of the abstention issues were "close calls," as the Bankruptcy Court put it.  (Appellant R. at Tab 38, 1602.)  Nevertheless, "although there is evidence to support it," the Court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Hinkson*, 585 F.3d at 1262 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  The Bankruptcy Court abused its discretion in declining to abstain.

> 2.    <u>The Record Does Not Indicate that the Bankruptcy Court Refused to Abstain to Decrease the Value of Claims</u>

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**   **ED CV15-00087 SJO**                    **DATE: November 24, 2015**
                 **6:13-bk-27611-MH**

In its Opening Brief, Revere argues that the Bankruptcy Court's main reason in refusing to abstain was to control state law issues to decrease the value of claims, constituting a *per se* abuse of discretion.[17]   (Appellant Opening Br. 24 (citing *Tucson Estates*, 912 F.2d at 1167) ("The bankruptcy court cannot use the claim's impact on the value of the estate to justify reaching a different conclusion than that dictated by state law.")).

The Court is not convinced that the record reveals a "clear" intention to minimize the amount of Revere's claims and simultaneously increase the value of the Roger Estate.  (*See* Appellant Opening Br. 25.)  The Bankruptcy Court noted the complexity of the issues, and cautioned that the end result "is just going to be massive administrative fees until the parties settle at some point," but noted that it could not "force a settlement." (*See* Appellant R. at Tab 39, 1688, 1671.) Notably, in its discussion of the *Tucson Estates* factors, the Bankruptcy Court did not discuss the Proof of Claim's impact on the value of the Roger Estate.

Accordingly, because the evidence in the record does not support Revere's allegation, the Court lacks the firm conviction that the Bankruptcy Court committed clear error on this ground.

                 3.      The Interest of Comity Did Not, By Itself, Require Abstention

Finally, Revere argues that the doctrine of comity, in and of itself, required abstention. (Appellant Opening Br. 26.)  In a "situation of two separate actions pending involving the same issues before two different courts, the Ninth Circuit has adopted the rule of comity in which the second court presented with the issue defers to the first court."  *In re Popp*, 323 B.R. 260, 269 (B.A.P. 9th Cir. 2005) (citations omitted).

Contrary to Revere's arguments, the law does not "overwhelmingly" hold that bankruptcy courts must defer to state courts under these circumstances.  (*See* Appellant Opening Br. 26.)  First, the language of Section 1334 is expressly discretionary, not mandatory:  "[N]othing in this section prevents a district court . . . in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding."  28 U.S.C. § 1334(c)(1).

Second, Revere's argument is directly contravened by *In re Republic*, 81 B.R. at 429, a case on which it relies in its opening brief.  In *In re Republic*, the bankruptcy court, in deciding whether or

---

[17]  For instance, Revere alleges that the Bankruptcy Court "wanted to force DJRI back into bankruptcy because 'I can't control what the receiver does with DJRI in the state court at this point,'" (Appellant R. at Tab 39, 1674), and that "because the Bankruptcy Court wanted to keep the value of Revere's claims down, 'I'm shifting from working with a surgical knife to a sledgehammer at this point.'"  (Appellant R. at Tab 39, 1673.)

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**


**CASE NO.:   ED CV15-00087 SJO**                    **DATE: November 24, 2015**
               **6:13-bk-27611-MH**


not to abstain, stated that "there are numerous factors I will look to and balance"—the same 12 factors that became known as the *Tucson Estates* factors.  81 B.R. at 429; *see also Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) (explaining that "this 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration").  In sum, comity, alone, did not require abstention. As such, the Bankruptcy Court did not abuse its discretion on this ground.

III.   RULING

For the foregoing reasons, the Court **GRANTS** Roger's Motion to Augment the Record, or in the Alternative, Request for Judicial Notice.  The Court finds that the Bankruptcy Court abused its discretion in denying Appellant Revere Financial Corporation's Motion to Abstain, and **REVERSES** the Bankruptcy Court's Order Denying Revere's Motion for Order Abstaining From Hearing Any State Law Issues and Order Staying Claim Objection Proceedings.  Accordingly, the Court **REMANDS** the case with instructions to grant Appellant's Motion to Abstain.   The Court **DENIES** Roger's Motion to Dismiss Appeal.

IT IS SO ORDERED.